Reese, J,
delivered the opinion of the court.
Tbe complainant commenced this suit in the chancery court at Carthage, for the purpose of .redeeming certain ne-groes conveyed by him to the defendants intestate by a bill of sale, absolute upon its face, but which complainant insisted should, under the circumstances, be deemed and adjudged a mortgage. The bill in the chancery court was dismissed, and the complainant appealed to the late court of error and appeals, held at Sparta. Upon the hearing of the cause, the decree of the chancellor, dismissing the bill, was reversed, the transactions of sale adjudged to be a mortgage, *49 negroes ordered to be delivered to a receiver, and an account directed to be taken of the mortgage money from the complainant, and of the hire due from the defendant. At the next term of the court of errors and appeals at Sparta, a petition for a rehearing was filed, for the purpose of producing a reversal of the decree of that court, and an affirmance of the decree in the chancery court; and the inquiry now is, ought this court to rehear the cause. The ques-the power, the court, m a mattion is new, if not difficult, and relating to duty, and the course of proceeding ter final in its nature, it is certainly highly important, and lias merited and received at our hands an attentive consideration.
When this cause was heard by the 1 .to court of errors and appeals at Sparta, its jurisdiction, with reference to the case and in general, was appellate only. In our constitution recently framed, the jurisdiction of this courtis declared to be “appellate only under such restrictions and regulations as may from time to time be prescribed by law; but it may possess such other jurisdiction as is now conferred bylaw on the present supreme court.” (Const. art. 6, sec. 2.) We have said that this question is new, but the contrary is supposed and urged by the counsel for the petitioner; they contend that the question was raised and determined in favor of the position they assume, in the case of Craig & Edmonson vs. Buchanan, 1 Yer. 142. Against the authority of that case, as resting upon its own peculiar circumstances, we are not prepared, nor is it necessary to object. We should have been as well satisfied with the case, certainly, if the court had acted on what wc are informed in the case, were the first impressions of the able judge who delivered the opinion of the court. The difference is so marked between a court of dernier resort and one of original jurisdiction; and again, between the court of chancery in England, always at least in theory, open, and for the transaction of business, and our court, whoso power and jurisdiction over cases upon its docket is limited to its annual terms. And the course of the court and the mode of proceeding there and here so differ from each other, that the power to rehear in this court, *50 or to refuse it, can hardly depend upon any analogy or want analogy, between the act of 1801, c 6, § 42, 44, 45, or the proceedings under it, and the practice m England ot enrolment in equity; indeed, there is no analogy between this court, as now constituted, whose jurisdiction is appellate only, and the court of chancery in England, whose jurisdiction is original as well as appellate. But the case in 1 Yer. 142, was not on appeal from the chancery to the supreme court, there never was any decree pronounced in the chancery court; it was heard as an original cause in the court of appeals. Much force is given to that circumstance in the opinion; it therefore differs from the case before the court.
In England, we are told, there are three modes by which? a decree may be reversed; by a rehearing, by a bill of review, and by an appeal to the House of Lords. 1 New. Ch. 360. The rehearing and the bill of review are proceedings for reversal applicable to the court of chancery only; the appeal to their final judicature, the House of Lords, is considered a proceeding for reversal distinct from a rehearing; but an appeal from the master of the ro'ls, or the vice chancellor to the lord chancellor,is deemed and called a rehearing. If it were settled conclusively by authority, that a cause heard or even reheard before the master of the rolls, might he heard again, and even reheard before the chancellor, it would not prove, we think, or have any tendency to prove that therefore this-court of appellate and final jurisdiction should rehear a cause decided at a previous term of the court. It is not pretended that this is ever done in the House of Lords, or in the court of appeals in New York; nor is any authority whatever produced to show that it is done in any jurisdiction which is both appellate and final. But if the mode of exercising the appellate and final jurisdiction of this court could be properly illustrated by the mode in which that of the chancellor in England is exercised, who possesses much appellate, much original, but no final jurisdiction; still the general rule there is, that alter an appeal from the rolls to the lord chancellor, a rehearing before him will not be allowed; hut if a cause is first heard at the rolls, and afterwards re *51 heard there, it may afterwards be heard upon appeal to the lord chancellor. See 1 New. Ch. P. 363. The first part of . . . * p oposition, to wit, that a cause heard at the rolls, and upon appeal, heard by the chancellor, will not be reheard by the latter, is maintained in E. India Comp. vs. Boddoue, 13 Ves. 421; Brown vs. Higgs, 8 Ves. 561; 16 Ves. 214, 330, This has been regarded as a rule since the case of Fox vs. Machreth, reported 2 Co. 158. The second clause of the proposition, to wit, that a cause heard and reheard at the rolls, will be heard upon appeal to the chancellor, is proved by the case of Blackburn vs. Jepson, 2 Ves. & Beam. 358; but it has no tendency to prove that this cause should be reheard in this court; indeed, that such a question should have been raised before the lord chancellor, and discussed as one of difficulty by able counsel, and decided by Lord Eldon (chancellor) with hesitation, strikingly prove how little adapted are the course of proceeding and the jurisdiction of that court to illustrate the power and duty of this. What would that question have been in reference to this court, supposing it to represent the lord chancellor and the court of chancery, and the master of the rolls? It would have been, whether a case which has been heard in the chancery court, and upon petition for rehearing, reheard there, can be heard upon appeal in this court. The question could not be seriously asked, in reference to our system; not so, however, in England. Blackburn and Jepson was a case where the cause being heard at the rolls, a petition for rehearing as to part of the decree, touching an account of tithes, was presented at the roils, and a petition of appeal to the lord chancellor against so much of the decree as directed issues to try the modus, &c. The cause in part was reheard at the rolls, and the decree-affirmed. The defendants then presented a petition of appeal to the lord chancellor, as to that part-of the decree which had been so reheard and affirmed; upon which petition an order was made by the lord chancellor, setting down the appeal, and the plaintiffs moved to discharge that order. This motion was supported by counsel upon the ground that an appeal is a rehearing, and that in Brown vs. Higgs, 8 Ves. 561, upon *52 a full consideration of all the cases, it is settled as a rule, that but one rehearing is allowed. The other side allowed, that the case cited proved that no appeal would lie to tho lord chancellor alter a rehearing at the rolls. The greatest absurdity, they said, would follow such a rule so applied, making the lord chancellor a ministerial officer to enrol the decrees of a judge of inferior jurisdiction. The lord chancellor said, “Having read tho case of Brown vs. Higgs, he could not refuse to hear this appeal, but under the circumstances it ought to be brought up with tho other appeal.” In this case the general rule is not controverted, but confirmed, that a case onco heard at the rolls, and then before the lord chancellor, shall not be reheard by the latter. We are referred to the reign of Charles II, in the case of James Noel vs. Robinson, 1 Ver. 94, wbeio the reporter in a loose note speaks of the cause having been three or four times heard before Nottingham and Jeffries. These may have been re-arguments; at ail events it was long before the rule was authoiitatively settled. The case of Howel vs. Howel, 1 Dickens, - in 1769, in a mere note, does state the adoption of a course contrary to the rule; the rule, however, we think well settled, hut if it were not, that would make no difference, as wo have said in this question, which cannot be made to turn upon that rule. The decree pronounced at Sparta in this case was a final decree in the sense used in England and New York, 17 J. R, 548; 12 J. R. 500; 1 New. Ch. 322. It was res judicata, when the petition was filed and beyond the control of the couit as much as if no account had been ordered, nor any other step directed to be taken, merely in execution of the decree. When this petition was filod, the court had no more power over the decree of the last term, than if that decree had been one dismissing the hill. The retention of the cause in court, for the purpose of carrying the decree into execution, gave the court, at a subsequent term, uo more control over the decree itself than if the case had been sent down to the chancery court for the execution of the decree. The supreme court of the United States, whose jurisdiction is appellate, has long settled, that when their *53 mandate issues to the circuit court, to carry a decree J theirs into execution, they upon appeal from subsequent pro--cec-Gings have no power over their original decree m the cause, it is res judicata. 5 Cranch, 313, 316, 317; 10 Wheaton, 439, 442, 3, 4.
Indeed such a decree, as was rendered in this cause at Sparta, a decree which settled the facts and principles establishing the rights oí the parties, and which declared those rights could not have been reheard, upon a petition filed at a subsequent term, if it had been made in the chancery court. We do not mean that the rules adopted by the chancellors prevented this, but that before these ¡ules, and independently of them; it was so upon principle and authority. If, as is said in 1 Yer. 142, a different practice prevailed, that practice must have been founded upon a mistake of the term “final decree,” taking them to mean the last order in the case. Such practice, even in the chancery court would involve the absurd necessity of actually rehearing the cause in order to determine the preliminary question, whether a rehearing would be granted.
Upon the whole we are veiy clear that the decree at Sparta is res judicata, that we have no power over it, and cannot grant a rehearing.
After the motion for a rehearing had been disposed of, the court took up the case upon exceptions to the report of the clerk and master. The defendant, Lawrence, was the executor of Bigelow, the mortgagee. After Bigelow’s death, he gave bond and security, and took the negroes into possession, and held them in possession ever since. The clerk and master, after charging him with hire, &c. allowed an account for medical services and attention to the slaves whilst in the possession of the mortgagee in his life time, and also whilst in possession of his executor. To this exception was taken by the complainant, and is the third exception alluded to in the subsequent opinion. There were several other exceptions which it is unnecessary to notice. The opinion on this point was delivered by
*54 Green, J.
The third exception of complainant is sustained.
The medical account of Dr. Win. P. Lawrence cannot be allowed. The decree settles the right of the parties and directed the commissioner to take the negroes into his possession, until the defendant should give bond and security for their forthcoming. The executor of Bigelow, after his death, gave bond and security and took the negroes into possession,, and has retained them ever since. If he had hired them out, the persons hiring them would have been obliged to pay for medical services rendered to them; surely then he cannot upon any principle, by keeping them himself, make Overton responsible for the medical services rendered to them, at the same time that he is only charged such hire as he might have obtained from others. This would have bee 1 the plain course of equity in this case, independently of any principle regulating the duties and responsibilities of mortgagees of slaves generally. But in the case of Young vs. Henderson & Forgey, 4 Hay. Rep. 10; it is decided that a pawnee or mortgagee of a negro is subject to the same responsibilities and duties that exist in the case of a hirer. Pie is, say the court, the temporary owner, and his responsibilities and duties for the time he so holds him, are the same as those that devolve upon the general owner.
This doctrine the court thinks is essential to secure the slave in needful food and raiment for his preservation, and to prevent cruelties, which may force him to absent himself, so that he may be lost to the general owner; certainly, a mortgagee in accounting for the hire of a mortgaged slave is never charged a larger sum than could be procured for the slave, by a contract which would create upon the part of the hirer all these duties and responsibilities, and it is difficult to perceive any reason why the mortgagee should not be held to their performance.